**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Grinnell Mutual Reinsurance Company, *as subrogee of Cannon Golf Club, Inc.*, | File No. 25-CV-0414 (JMB/SGE) |
| Plaintiff, | |
| v. | **ORDER** |
| RenewAire, LLC, and Regal Beloit America, Inc., | |
| Defendants. | |
| Regal Beloit America, Inc., | |
| Third-Party Plaintiff, | |
| v. | |
| Rockwell Automation, Inc., and Sensata Technologies, Inc., | |
| Third-Party Defendants. | |

Daniel A. Haws and Aidan I. Zielske, HAWS-KM, P.A., St. Paul, MN, for Defendant and Third-Party Plaintiff Regal Beloit America, Inc.

Zane P. Aubert and Shawn M. Raiter, Larson King, LLP, St. Paul, MN; and Michael T. McCormack, O'Sullivan McCormack Jensen & Bliss PC (*pro hac vice*), for Third-Party Defendant Sensata Technologies, Inc.

This matter is before the Court on Third-Party Defendant Sensata Technologies, Inc.'s (Sensata) Rule 12 Motion to Dismiss Defendant and Third-Party Plaintiff Regal Beloit America Inc.'s (RBAI) Third-Party Complaint (TPC). (Doc. No. 49). In this action over property damage from a fire, the property owner's insurer, Plaintiff Grinnell Mutual

Reinsurance Company, Inc. (Grinnell), as subrogee, sued three companies, including Sensata and RBAI, for allegedly causing the fire, seeking damages. Eventually, RBAI filed the TPC against Sensata asserting claims for contribution and/or indemnity. For the reasons explained below, the Court grants RBAI's motion to dismiss the TPC in part.

## BACKGROUND

On February 16, 2024, a fire erupted at the Cannon Golf Club in Cannon Falls, Minnesota. (Doc. No. 20 [hereinafter, "Am. Compl."] ¶ 6.) Cannon Golf Club had a business and property insurance policy through its insurer, Grinnell. (*Id.* ¶ 1.) Grinnell paid Cannon Golf Club, its insured, $242,276.45 for damages caused by the fire. (*Id.* ¶ 13.)

Grinnell then brought this products-liability action against Defendants RenewAire LLC (RenewAire), Sensata, and RBAI.[1] (Doc. No. 1.) Grinnell alleges that the fire originated in a mechanical closet at the golf club inside of an Energy Recovery Ventilation (ERV) system, which had been manufactured by RenewAire. (*Id.* ¶¶ 6–8.) A month before the fire, an approved component part of the ERV, a "motor assembly," which was manufactured by RBAI and had component parts attributable to Sensata, had been replaced. (*Id.* ¶ 8.) Grinnell alleges that the fire "originated in the motor windings which created temperatures sufficient to ignite combustible material within the motor and subsequently the ERV." (*Id.* ¶ 10.)

In its Amended Complaint, Grinnell alleges that the RenewAire, Sensata, and RBAI were negligent in the product design or manufacture of the "ERV, motor, and their

---

[1] Grinnell initially named a different company related to RBAI but, by stipulation, amended its complaint to assert its claims against RBAI instead. (*See* Doc. No. 19.)

2

component parts" (Am. Compl. ¶¶ 15–18 (Count I)), were negligent in failing to warn about the risk of harm and/or by supplying defective "replacement motors and component parts" for the ERV (*id.* ¶¶ 20–21 (Count II)), and/or breached their implied warranty of merchantability in designing, manufacturing, marketing, distributing, and selling the ERV and its approved replacement motors (*id.* ¶¶ 24–29 (Count III)).

Sensata did not move to dismiss and, instead, answered. (Doc. Nos. 6, 24.) RBAI also answered without moving to dismiss. (Doc. No. 24.) RBAI later moved to amend its answer to assert a crossclaim against Sensata. (Doc. No. 31.) Shortly after RBAI filed its motion seeking to add a crossclaim against Sensata, the Court granted Sensata's and Grinnell's stipulation of dismissal, by which Grinnell dismissed its claims against Sensata only, with prejudice. (Doc. Nos. 36, 38.)

By stipulation of the remaining parties, and with Court approval, RBAI then filed and served its TPC against Sensata. (Doc. Nos. 40, 42, 44, 46.) The TPC incorporates by reference all of Grinnell's allegations and denies that RBAI caused the fire or is otherwise liable, but alleges in the alternative that "if Plaintiff was damaged as set forth in Plaintiff's Complaint, such damage was caused by the Klixon CEG73GB motor protector designed and manufactured by [Sensata]." (Doc. No. 44 [hereinafter, "TPC"] ¶¶ 10, 14–15.) RBAI seeks contribution *and* indemnity from Sensata; RBAI alleges that if it "is found to be liable to Plaintiff for any amount of damages," in Grinnell's suit, then RBAI will be "entitled to contribution and indemnity from [Sensata] for any amounts or any apportioned share of fault that may be awarded to [Grinnell]" due to the misconduct attributable to Sensata. (*Id.* ¶ 16.)

## DISCUSSION

Sensata has moved to dismiss RBAI's claims for contribution and indemnity against it in the TPC pursuant to Federal Rule of Civil Procedure 12(b)(6). As discussed below, the Court grants the motion in part and denies it in part because RBAI has stated a claim for contribution but not for indemnity.

The usual Rule 12(b)(6) standards apply to a motion to dismiss a third-party complaint. *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697–98 (8th Cir. 2003). When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those allegations in the light most favorable to the plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.* In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."[2] *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (citation omitted).

The Federal Rules of Civil Procedure permit a party to serve a third-party complaint on a "nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). "The crucial characteristic of a Rule 14 claim is that defendant is

---

[2] Both parties make factual assertions in their briefs concerning matters outside the pleadings, including referring to discovery and to asserted communications between Grinnell and Sensata concerning the dismissal of Sensata. The Court declines to consider such matters at this stage.

attempting to transfer to the third-party defendant the liability asserted against defendant by the original plaintiff."  6 Wright & Miller, *Fed. Prac. & Proc.* § 1446 (3d ed.).

## I.    RBAI'S CLAIMS FOR CONTRIBUTION AND INDEMNITY

Sensata argues that RBAI's contribution and indemnity claims must be dismissed because RBAI cannot be held liable for any negligence of Sensata.  (Doc. No. 51 at 4.) The Court agrees in part; it concludes that RBAI has stated a claim for contribution, but not for indemnity.

### A.    Contribution Claim

Sensata argues that contribution "is either inapplicable to this lawsuit or [RBAI] may argue any contributory fault of Sensata at trial and, therefore, would not pay more than its fair share of liability." (Doc. No. 51 at 5.)  In Sensata's view, Grinnell is legally barred from seeking more damages from RBAI than are attributable to RBAI's fault, so RBAI cannot maintain a claim against Sensata for any overpayment by RBAI to Grinnell.  The Court disagrees.

A contribution claim under Minnesota law[3] requires the following two key elements: "(1) common liability of two or more actors to the injured party; and (2) the payment by one of the actors of more than its fair share of that common liability." *Nuessmeier Elec., Inc. v. Weiss Mfg. Co.*, 632 N.W.2d 248, 251 (Minn. Ct. App. 2001) (citing *City of Willmar v. Short-Elliott-Hendrickson, Inc.*, 512 N.W.2d 872, 874 (Minn. 1994)).  "Common liability is created at the instant the tort is committed" and "arises when

---

[3] The parties appear to agree that Minnesota tort law governs RBAI's claims in the TPC.

both parties are liable to the injured party for part or all of the same damages. *Id.* Common liability "exists even though the parties' liability may depend on different legal theories." *Id.* Moreover, "even when a plaintiff could not enforce recovery against a defendant, common liability remains if the factor preventing enforcement is extrinsic to the tort itself . . . and the acts or omissions of the defendant are otherwise sufficient to subject the defendant to liability." *Id.* at 252. Even when common liability exists, a party may only recover contribution if it "has paid more than its fair share of the loss." *Id.* at 253.

Sensata first argues that, "[i]f" Sensata and RBAI do *not* share common liability, then Sensata cannot be held liable in this action because Grinnell dismissed Sensata from its lawsuit prejudice. (Doc. No. 51 at 5.) Sensata does not develop this argument or explain its premise. To the extent Sensata is asking the Court to find as a factual matter that Sensata does not share common liability with RBAI, the Court is constrained on a Rule 12(b)(6) motion to accept the well-pleaded factual allegations in the pleadings as true. Those allegations are that RBAI, Sensata, and RenewAire were all negligent in manufacturing, installing, and replacing parts in the ERV motor assembly and related component parts and that their negligence caused the fire that damaged the property. (Am. Compl. ¶¶ 8, 10, 17–18, 21–22, 25–27; TPC ¶¶ 8–9.) Put another way, the allegations are that Sensata, RBAI, and RenewAire are joint tortfeasors, subject to RBAI reserving its defense that RBAI is not liable at all.

Sensata next argues that if Sensata and RBAI *do* have common liability, then RBAI will be able to seek a special verdict from the jury determining each entity's respective amount of fault, and that RBAI cannot be held liable for more than its share of fault. (Doc.

6

No. 51 at 5–6.)   As RBAI observes, however, under the applicable Minnesota statute governing comparative fault, Minn. Stat. § 604.02, subd. 1, RBAI could be held jointly and severally liable for the whole award if a jury finds RBAI to be more than 50% at fault.  The Amended Complaint alleges that RBAI manufactured the motor assembly, that Sensata manufactured, assembled, and/or supplied the motor assembly component parts, and that the fire "originated in the motor windings which created temperatures sufficient to ignite combustible material within the motor and subsequently the ERV."  (Am. Compl. ¶¶ 8, 10; *see also* TPC ¶¶ 9–10 (reiterating Grinnell's allegations and claiming that if Plaintiff was damaged as alleged, the damage was caused by Sensata's "Klixon CEG73GB motor protector").)  Accepting the allegations as true, the Court cannot conclude that, as a matter of law, RBAI cannot be found more than 50% at fault.

Sensata also argues that, because it had been dismissed from Grinnell's suit with prejudice, it is insulated from liability of any remaining defendants, such as in the case of a released party to a *Pierringer* release.  (Doc. No. 51 at 6 (citing *Alumax Mill Prods., Inc. v. Cong. Fin. Corp.*, 912 F.2d 996, 1009 (8th Cir. 1990), and *Bernardi Ortiz v. Cybex Int'l, Inc.*, 345 F. Supp. 3d 107, 124 (D.P.R. 2018)).)  A *Pierringer* release allows a plaintiff to release one joint tortfeasor from a lawsuit while expressly reserving the right to pursue its claims against the other joint tortfeasor and promising to indemnify the released, settling tortfeasor from any contribution claims by the nonsettling tortfeasor.  *Alumax Mill Prods.*, 912 F.2d at 1007–08.  The agreement to indemnify the settling co-defendant is a crucial part of a *Pierringer* release because it is what guarantees that "the nonsettling defendants will not pay more than their fair share of the verdict."  *Sershen v. Metro. Council*, 974

N.W.2d 1, 13 (Minn. 2022) (quotation omitted).  It is the *Pierringer* release itself, not just the dismissal, that operates to insulate the settling party from continuing participation in and liability related to the lawsuit.  *See Frey v. Snelgrove*, 269 N.W.2d 918, 923 (Minn. 1978) (explaining that "if a nonsettling party has cross-claims for both contribution and indemnity, either of which is not covered by the terms of the release, then the settling defendant should continue as a party for the limited purpose of defending against the surviving cross-claim").  Sensata's analogy to a released *Pierringer* defendant is unpersuasive because there is nothing in the record to show that Sensata's dismissal was subject to a *Pierringer* release.  Sensata itself does not even assert that it obtained a *Pierringer* release.  Counsel for Grinnell appeared at the hearing (*see* Doc. No. 67) and also said nothing about having agreed to indemnify Sensata.

Sensata then asks this Court to decide as a matter of first impression that, where a plaintiff voluntarily dismisses with prejudice its claims against one defendant who is an alleged joint tortfeasor, the plaintiff as a matter of law may not seek to hold the remaining joint tortfeasor co-defendant jointly and severally liable under Minn. Stat. § 604.02, subd. 1.  (Doc. No. 66 at 2–3.)  Sensata argues that there are good policy reasons for such a rule, to prevent gamesmanship on the part of a plaintiff.  (*Id.*)  As the sole support for this argument, Sensata cites to a statement in a footnote in *Imlay v. City of Lake Crystal*, 453 N.W.2d 326 (Minn. 1990), "question[ing] the applicability of joint and several liability" where the plaintiff did not sue a party, which was brought into the proceedings by the defendant's third-party complaint.  *Id.* at 330 n.3.  More recent caselaw, however, casts doubt on that interpretation of *Imlay.  See, e.g., Staab v. Diocese of St. Cloud*, 813 N.W.2d

68, 78 (Minn. 2012) (explaining in the majority opinion that "the doctrine of joint and several liability applies under the circumstances in *Imlay* because joint and several liability arises at the time the tortfeasors commit the tort"). "Whether particular liable persons are joined to a lawsuit—and by which party—is irrelevant to the question of whether the doctrine of joint and several liability applies." *Id.*; *see also Nuessmeier Elec., Inc.*, 632 N.W.2d at 252 (observing that "even when a plaintiff could not enforce recovery against a defendant, common liability remains if the factor preventing enforcement is extrinsic to the tort itself—such as . . . a covenant not to sue . . . —and the acts or omissions of the defendant are otherwise sufficient to subject the defendant to liability").

Therefore, the Court declines to adopt Sensata's proposed new rule of law. Absent a *Pierringer* release, the plaintiff's voluntary dismissal of one alleged joint tortfeasor co-defendant cannot, standing alone, destroy the remaining alleged joint tortfeasor co-defendant's right to seek contribution in the event it pays more than its fair share. The Court will not dismiss RBAI's claim for contribution.

## B.   Indemnity Claim

Sensata also argues that RBAI has not pleaded sufficient facts to support a claim for indemnity. The Court agrees.

"Unlike contribution, where responsibility for damages is reallocated based on relative fault, indemnity shifts the entire loss from one culpable wrongdoer to another." *Engvall v. Soo Line R.R. Co.*, 632 N.W.2d 560, 571 (Minn. 2001) (quotation omitted). A tortfeasor may obtain indemnity from a joint tortfeasor only in certain situations, such as "(1) [w]here the one seeking indemnity has only a derivative or vicarious liability for

9

damage caused by the one sought to be charged[;] (2) [w]here the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged[;] (3) [w]here the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged[;] [or (4)] [w]here there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved." *Id.* (quotation omitted).

Nothing in RBAI's TPC alleges the existence of circumstances like those enumerated in *Engvall*.  Further, RBAI did not address this argument in its response brief. Therefore, the Court dismisses RBAI's claim for indemnity.

## II. SUFFICIENCY OF THE ALLEGATIONS CONCERNING THE FLAW IN THE ERV SYSTEM

Sensata also argues that RBAI fails to state a claim under Rule 12(b)(6) because the TPC has not alleged any flaw in the component part manufactured by Sensata.  (Doc. No. 51 at 7.)  Sensata acknowledges that RBAI alleges that "the Klixon CEG73GB motor protector" caused the damage but contends that RBAI should have alleged *how* the part caused the incident.  (*Id.*)

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Courts need "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Hager*, 735 F.3d at 1014 (citation omitted).  "[L]egal conclusions can provide the framework of a complaint" but "must be supported by factual allegations" that "raise a right to relief above the speculative level."

*Id.* (citations omitted).

By adding more detail to Grinnell's allegations regarding the specific product supplied by Sensata to the ERV system that caught fire, RBAI has alleged enough facts to state a claim. Sensata answered Grinnell's Amended Complaint rather than move pursuant to Rule 12(b)(6) for failure to state a claim (Doc. No. 24), and RBAI's third-party complaint only adds further detail to the Amended Complaint by specifying a particular component part supplied by Sensata for this ERV system. RBAI alleges that that Sensata's Klixon CEG73GB motor protector caused the fire that "originated in motor windings which caused temperatures sufficient to ignite combustible material within the motor and subsequently the ERV." (RBAI Compl. ¶¶ 8–9.)[4] Although Sensata argues that RBAI should have alleged more facts about how the motor protector caused the fire, Sensata cites no case requiring that level of detail. RBAI has alleged sufficient facts to state a plausible claim.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Third-Party Defendant Sensata Technologies, Inc.'s Rule 12 Motion to Dismiss Third-Party Complaint (Doc. No. 44) is GRANTED IN PART and DENIED IN PART, as follows:

1.    Third-Party Plaintiff Regal Beloit America, Inc.'s claim for indemnity in its Third-Party-Complaint Against Sensata Technologies, Inc. is DISMISSED WITHOUT PREJUDICE.

---

[4] Both parties appear to refer to facts that are outside the pleadings. (*See* Doc. No. 66 at 3–4; Doc. No. 58 at 4, 8–9.) The Court declines to consider them.

11

2.      Third-Party Defendant Sensata Technologies, Inc.'s Rule 12 Motion to Dismiss Third-Party Complaint is DENIED in all other respects.


Dated: March 24, 2026                                      /s/ *Jeffrey M. Bryan*
                                                           Judge Jeffrey M. Bryan
                                                           United States District Court